NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRATERNAL ORDER OF POLICE MIDDLESEX COUNTY SHERIFF'S OFFICERS LODGE 59, JOSEPH A. KASHA, STEVEN ECKEL and MICHAEL FILOMINO,<br><br>                    Plaintiffs,<br><br>v.<br><br>SHERIFF JOSEPH C. SPICUZZO, COUNTY OF MIDDLESEX, CHIEF SHERIFF OFFICER ANGELO FALCONE and CHIEF WARRANT OFFICER DONALD ALMASY,<br><br>                    Defendants. | Civ. 98-4907 (WGB)<br><br>M E M O R A N D U M<br>O P I N I O N |

**APPEARANCES:**

Brian Mitchell Cige
7 East High Street
Somerville, New Jersey 08876

    Counsel to Plaintiffs

Susan K. O'Connor
**Hoagland, Longo, Moran, Dunst & Doukas, LLP**
40 Paterson Street
PO Box 480
New Brunswick, New Jersey 08903

    Counsel to Defendant Sheriff Joseph C. Spicuzzo

C. Judson Hamlin
**Purcell, Ries, Shannon, Mulcahy & O'Neill**
Crossroads Business Center
One Pluckemin Way
PO Box 754
Bedminster, New Jersey 07921

    Counsel to Defendant County of Middlesex

Peter J. Barnes, III
**Jorgensen & Barnes, LLC**

33 Wood Ave., South
Iselin, New Jersey 08830

 Counsel to Defendant Chief Sheriff Officer Angelo Falcone

Clark W. Convery
**Convery, Convery & Shihar**
32 South Main
Edison, New Jersey 08837

 Counsel to Defendant to Chief Warrant Officer Donald Almasy


**BASSLER, SENIOR DISTRICT JUDGE:**

**I. Introduction**[1]

 Plaintiffs Fraternal Order of Police Middlesex County Sheriff's Officers Lodge 59, Joseph Kasha, Steven Eckel and Michael Filomino (collectively as "Plaintiffs") are current and former members of the Middlesex County Sheriff's Department and their respective union.  Plaintiffs and other members of the Sheriff's Department filed employment grievances with the New Jersey Public Employment Relations Commission ("PERC") against Defendants Sheriff Joseph Spicuzzo, Middlesex County, Chief Sheriff Officer Angelo Falcone, and Chief Warrant Officer Donald Almasy ("Defendants") for illegally disciplining and reprimanding Plaintiffs.  Plaintiffs alleged that the unfair employment practices were based on Defendants', members of the Police Benevolent Association Local Number 165 ("PBA 165"), dislike for

---

[1] In a separate Order, the Court denies Plaintiffs' Motion to Amend or Supplement the Complaint.

Plaintiffs' membership with the Fraternal Order of Police, Lodge No. 59 ("FOP 59").  Shortly after filing their grievances with the PERC, Plaintiffs filed a similar complaint ("Complaint") pursuant to 42 U.S.C. § 1983 and § 1985 in the United States District Court for the District of New Jersey.[2]  The proceedings in the District Court of New Jersey, however, were stayed pending the administrative outcome and appeals in the state courts.

Having a final decision by the New Jersey Appellate Division and a denial of certification by the Supreme Court of New Jersey, Defendants now move for summary judgment on the grounds that (1) this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine and (2) that the remaining claims by Plaintiff Eckel should be dismissed.

On March 22, 2006 the Court heard oral argument.  The Court finds that it lacks subject matter jurisdiction to entertain what is in essence an appeal from a state court ruling on all claims except those by Plaintiff Eckel.

**II. Background**

The factual background and the multiple allegations within Plaintiffs' Complaint and the similar charges filed with the PERC have been well documented in the prior state court and administrative decisions; therefore, it is unnecessary to once again fully recite the extensive factual background.  The Court,

---

[2] Jurisdiction is premised on 28 U.S.C. § 1331.

writing for the parties, will limit its discussion only to the facts necessary to reach its conclusion.

The grounds for this lawsuit revolve around an alleged dispute among members of FOP 59 and members of PBA 165 of the Middlesex County Sheriff's Office in Middlesex County, New Jersey.

In January 1998, plaintiff Joseph Kasha ("Kasha") filed an Unfair Practice Charge with the PERC against the Middlesex County Sheriff alleging that he was involuntarily transferred or reassigned because of his FOP 59 affiliation.

In October 1998, plaintiff Steven Eckel ("Eckel"), also a Middlesex County Sheriff's Officer, joined in Kasha's PERC charge.  Together they filed an Amended Unfair Practice Charge ("Amended Charge") alleging that Sheriff Joseph Spicuzzo caused and encouraged antagonistic relationships with them and other members of the FOP 59 resulting in involuntary transfers and disciplinary actions.  They claimed that the Sheriff violated the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1, *et seq*. ("the Act"), by creating a hostile atmosphere toward members of FOP 59 and by treating FOP members differently from PBA 165 members.  Kasha and Eckel filed a Second Amended Unfair Practice Charge ("Second Amended Charge") in February 1999.

On October 28, 1998, prior to filing the Second Amended Charge with the PERC, FOP 59, Kasha, Eckel and Sheriff's Officer

4

Michael Filomino (collectively as "Plaintiffs") filed this action in the United States District Court for the District of New Jersey. On March 17, 1999, upon an order of the Court, Plaintiffs filed a More Definite Statement that was identical to the first 70 paragraphs of Plaintiffs' Second Amended Charge filed with the PERC. Because of the PERC charge, former Magistrate Judge Stanley Chesler, on April 12, 1999, ordered that all proceedings in the District Court be stayed pending resolution of the PERC's administrative proceedings. On April 16, 1999, former District Court Judge Maryanne Barry ordered the clerk to administratively terminate the action, without prejudice. On December 3, 2002, Judge Chesler signed a second order staying all proceedings pending the determination of all appeals.

The PERC matter was assigned to an Administrative Law Judge ("ALJ"). Hearings were held between December 2000 and May 2001, which included the testimony of Kasha, Eckel, Sheriff's Officer Filomino ("Filomino") and other witnesses and Sheriff's Officers who had joined in Plaintiffs' charges against Defendants. The ALJ issued an initial decision on April 1, 2002. The ALJ's findings included the allegations from the Unfair Practice Charge, the Amended Charge, the Second Amended Charge and two additional amended charges filed in October 2000.

The ALJ found two violations of the Act. The first involved

the reassignment and ten-day suspension of Eckel.  The ALJ concluded that the Sheriff's decisions to reassign Eckel and to suspend him for ten days were motivated by Eckel's protected inquires, as an FOP representative, among fellow employees about drug testing that he believed improper.  The ALJ further concluded that the Sheriff did not prove that he would have suspended Eckel absent those inquiries for ten days.

The second violation involved the reassignments of six FOP members.[3]  The ALJ recommended dismissing the remaining allegations made by Plaintiffs and the other Sheriff's Officers that had joined in their charges.  The ALJ concluded that the charging parties did not prove that the Sheriff treated FOP members disparately and recommended that the remaining allegations in the Complaint be dismissed.  See In re Middlesex County Sheriff, P.E.R.C. No. 2003-4, Docket No. CI-H-98-59 (July 26, 2002).

Both sides took exceptions to the ALJ's decision.  On review, the PERC "adopt[ed] and incorporate[d] the ALJ's findings of fact (Initial Decision at 3-67)" along with certain modifications.  Id. at 6.  Essentially, the PERC approved the dismissal of the remaining allegations and separately found that the reassignments of the six FOP members should also have been

---

[3] The Court believes the "six FOP members reassigned" to be Sheriff's Officers Kasha, Filomino, Randall Kijula, Bruce Allen, Robert Castasna, and Joe Giordano.

dismissed.  Id. at 12-15.  The PERC issued its Final Decision on July 26, 2002.[4]  In sum, it found that "Eckel had a right protected by the Act, to inquire of his fellow employees about the employer's drug testing practices," but that the remaining charges were without merit.  Id. at 9.

---

[4] The PERC's Final Order provides:
   The Middlesex County Sheriff is ordered to:
   A. Cease and desist from:
      1. Interfering with, restraining or coercing Sheriff's officers in the exercise of the rights guaranteed to them by the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., particularly by reassigning and suspending Steven Eckel for questioning unit members about drug testing.
      2. Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage employees in the exercise of the rights guaranteed to them by the Act, particularly by reassigning and suspending Steven Eckel for questioning unit members about drug testing.
   B. Take this action:
      1. Reassign Sheriff's Officer Eckel from the Probation department post to a courtroom post.
      2. Modify the Final Notice of Disciplinary Action issued to Sheriff's Officer Eckel on or about July 28, 1998 in conformance with the Final Action of the Merit System Board.
      3. Compensate or credit the time records of Sheriff's Officer Eckel in conformance with the Final Action of the Merit System Board.
      4. Post in all places where notices to employees are customarily posted, copies of the attached notice marked as Appendix "A."  Copies of such notice shall, after being signed by the Respondent's authorized representative, be posted immediately and maintained by it for at least sixty (60) consecutive days.  Reasonable steps shall be taken to ensure that such notices are not altered, defaced or covered by other materials.
      5. Within twenty (20) days of receipt of this decision, notify the Chair of the Commission of the steps the Respondent has taken to comply with this order.
   The remaining allegations in the Complaint are dismissed.  The remaining aspects of the case are transferred to the Merit System Board.
In re Middlesex County Sheriff, P.E.R.C. No. 2003-4, Docket No. CI-H-98-59 (July 26, 2002).

Cross-appeals were filed with the New Jersey Superior Court Appellate Division, which affirmed the PERC's Final Decision on July 8, 2004 as well as the final administrative determination of the Merit System Board ("MSB") entered on October 8, 2002. See In re Middlesex County Sheriff, No. A-57-02 (N.J. Super. Ct. App. Div. July 8, 2004). On cross-appeal, the charging officers argued (1) that Eckel's penalty could not stand and (2) that the PERC erred in failing to find that the County and Sheriff's Office illegally interfered with the rights of FOP 59 members. The Appellate Division found "no basis for disturbing the [PERC's] decision" and approved of the PERC's dismissal of the remaining unfair practice charges. Id. at 7, 18.

The New Jersey Supreme Court thereafter denied the Sheriff's Department's Petition for Certification. See In re Middlesex County Sheriff, 182 N.J. 151 (2004).

Plaintiffs' suit was reassigned to this Court upon the January 7, 2005 order of Chief Judge John Bissell. On July 1, 2005, Defendants filed a motion for summary judgment.

**III. Discussion**

A. The Rooker-Feldman Doctrine

In their motion for summary judgment, Defendants argue that the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine as to those claims asserted as unfair labor practice charges in the administrative and state courts and now

re-labeled as Plaintiffs' 42 U.S.C. § 1983 and § 1985 claims.

Under 28 U.S.C. § 1257, "[f]inal judgments or decrees rendered by the highest court of a State . . . may be reviewed by the Supreme Court."  In both <u>Rooker v. Fidelity Trust Co. et al</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), the United States Supreme Court interpreted 28 U.S.C. § 1257 to bar direct review of state supreme court decisions in any federal court except the United States Supreme Court.  Pursuant to the Rooker-Feldman doctrine, "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" <u>Blake v. Papadakos</u>, 953 F.2d 68, 71 (3d Cir. 1992) (quoting <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 483 n.16 (1983));  see also <u>Port Authority Police Benevolent Assoc., Inc. v. Port Authority of New York and New Jersey</u>, 973 F.2d 169, 177 (3d Cir. 1992).

Under the Rooker-Feldman doctrine, the Court must determine whether "the state court has considered and decided precisely the same claim that the plaintiff has presented to the federal court."  <u>ITT Corp. v. Intelnet Int'l Corp.</u>, 366 F.3d 205, 210 n. 8 (3d Cir. 2004).  The Court must then determine whether the federal claim is "inextricably intertwined" with the state court

adjudication.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 364 F.3d 102, 105-06 (3d Cir. 2004).

Plaintiffs limit their opposition to the operation of the Rooker-Feldman doctrine to its application against certain claims that were not "properly" before the PERC and the Appellate Division.  The core of Plaintiffs' opposition is that certain claims submitted in their charges, as amended, could not have been properly adjudicated by the PERC because those claims arose prior to six months before the filing of the unfair labor practices charges, discussed *infra*.  Plaintiffs' contend that "this Court can grant relief upon allegations of conduct occurring from October 29, 1996 until July 23, 1997, without holding either expressly or impliedly that the Appellate Division's decision affirming PERC and the MSB was wrong, without effecting what would amount to an appellate reversal of that decision." (Plaintiffs' Op. Br. at 17.)  The Court finds it unnecessary to consider allegations of conduct occurring after July 23, 1997 because Plaintiffs implicitly admit that those claims were properly adjudicated by the PERC and the Appellate Division.

The Act provides that "no complaint shall issue based upon any unfair practice occurring more than 6 months prior to the filing of the charge" absent tolling exceptions not applicable here.  N.J.S.A. 34:13A-5.4(c).  Plaintiffs argue that their first

10

Unfair Practice charge was filed on January 23, 1998; therefore, the only allegations properly subject to adjudication by the PERC and the Appellate Division's affirmance were those beginning July 23, 1997.  Additionally, Plaintiffs point out that the present action, sounding in 42 U.S.C. § 1983 and § 1985, is governed by a two-year statute of limitations.  See Cito v. Bridgewater Township Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989). Plaintiffs therefore conclude that because the Complaint was filed on October 29, 1998, all allegations of conduct occurring between October 29, 1996 (the start of the section 1983 statute of limitations) and July 23, 1997 (the start of the Act's statute of limitations) are both timely and not barred by the Rooker-Feldman doctrine.

Defendants argue that even if the Court were to accept Plaintiffs' theory, the Complaint and the subsequent More Definite Statement provide only one allegation that predates July 23, 1997 and that that allegation was directly considered and dismissed as unfounded by the ALJ, the PERC and the Appellate Division.[5]  (Defs' Reply Br. at 2.)  Defendants aver that

---

[5]  As identified by Defendants, the single issue in the Complaint and More Definite Statement that predates July 23, 1997 concerns Defendants denial of Sheriff Officer Gregg Bennett's bid for an assignment in June 1997. (Plaintiffs' More Definite Statement at ¶ 6.)  The ALJ considered Sheriff Officer Bennett's charge at paragraph 25 of the Initial Decision and ultimately dismissed the charge for lack of proof. County of Middlesex v. Eckel, ALJ Initial Decision, PERC Dkt. No. CI-H-98-59 at 44, 77 (April 1, 2002).  The PERC affirmed the ALJ's decision.  Although

"although the issue may not have been subject to adjudication by the PERC consistent with N.J.S.A. 34:13A-5.4(c), the PERC did in fact issue findings thereon, which were subsequently affirmed by the Appellate Division." (Id.)  Defendants are correct.

The Rooker-Feldman doctrine requires the Court to compare the claims raised in the state court with those raised in federal court.  Plaintiffs' Complaint and More Definite Statement generally contain the same allegations that Plaintiffs offered to and that were considered by the ALJ.  The ALJ's findings were then adopted in the PERC's Final Decision, which was subsequently affirmed by the Appellate Division.  The ALJ specifically noted that "The charge, as amended, alleges numerous instances in which the Sheriff caused and encouraged 'an antagonistic relationship with' and 'a hostile atmosphere toward' the membership of 'FOP 59' [a minority employee organization].  It alleges that FOP members are treated disparately than members of PBA in matters of hearings, job bids, training opportunities, punishments, and other terms or conditions of employment."  County of Middlesex v. Eckel, ALJ Initial Decision, PERC Dkt. No. CI-H-98-59 at 2 (April 1, 2002).

---

the allegation in paragraph 6 of Plaintiffs' More Definite Statement is identical to that same paragraph of the Second Amended Charge, the ALJ determined that the event occurred in June 1999.  There is no indication from the parties that the same event occurred once in June 1997 and again in June 1999.  The Court also notes that the allegation in paragraph 6 is not made by a Plaintiff in this lawsuit.

12

The PERC dismissed the unfair employment practice allegations by Plaintiffs, excluding Eckel's charges, because they failed to prove that the Sheriff had treated FOP members disparately in any matter. In re Middlesex County Sheriff, P.E.R.C. No. 2003-4, Docket No. CI-H-98-59, at 4, 14 (July 26, 2002). On appeal, the Appellate Division affirmed the PERC's Final Decision, noting with approval the dismissal of those unfair practice charges. In re Middlesex County Sheriff, No. A-57-02, at 7-8, 18 (N.J. Super. Ct. App. Div. July 8, 2004). The Appellate Division noted that "[t]he officers in their cross-appeal challenge PERC's dismissal of their claim of a pattern of unfair labor practices by the Sheriff against members of the FOP," and held that "[g]iven our scope of review, we find no basis for disturbing PERC's determinations." Id. at 18.

There is no material distinction between the allegations in Plaintiffs' More Definite Statement and the Second Amended Charge. The substance of Plaintiffs' Complaint is also similar to the ALJ's findings above. Plaintiffs allege that they were "subjected to a continuous pattern and practice of illegal behavior . . . an ongoing series of reprimands, disciplinary actions, reprisals, and job related actions, all committed by or at the direction of Defendants . . . without justification or competent factual basis, and have been motivated by Defendants' dislike for and malice towards the Plaintiffs as members of [FOP

13

59]. . . ." (Complaint at ¶ 4.)

Plaintiffs are merely attempting to collaterally attack the determination of the Appellate Division of New Jersey by arguing that the dismissal of the unfair charges by the ALJ and the PERC violated N.J.S.A. 34:13A-5.4(c).  A finding that the ALJ and the PERC did not violate that section is implicit in the Appellate Division's affirmance of the PERC's Final Decision because it did so for "substantially the reasons embodied in PERC's July 26, 2002 decision. . . ."  In re Middlesex County Sheriff, No. A-57-02, at 8 (N.J. Super. Ct. App. Div. July 8, 2004).  To find that the ALJ and the PERC mistakenly considered charges not properly before them, would result in this Court having to decide that the Appellate Division erroneously affirmed the administrative decisions.

In addition, having considered the analyses by the administrative and state courts, a finding that Defendants violated Plaintiffs' Constitutional rights enforceable under sections 1983 and 1985 would overrule the courts' dismissal of Plaintiffs' unfair employment practices charges.  Those courts found no animus by Defendants towards Plaintiffs' FOP 59 membership and that Plaintiffs were validly reassigned.

This type of lower federal court review of state court adjudications is prohibited by the Rooker-Feldman doctrine.  Whiteford v. Reed, 155 F.3d 671, 674 (3d Cir. 1998).  As noted by

14

the Third Circuit, "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." Id. (quoting FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996)).  The constitutional legitimacy of the administrative proceedings has already been passed upon by the state courts of New Jersey.  This Court is therefore without jurisdiction to review that decision.

### B. Eckle's Sections 1983 and 1985 Claims

Defendants also seek summary judgment on Eckel's sections 1983 and 1985 claims for violations of his rights guaranteed by the Federal Constitution's First Amendment.  To that end, Defendants argue that Eckel is estopped from relitigating claims presented to the state and administrative courts.  Alternatively, Defendants argue that Eckel's claims should be dismissed because they do not amount to violations of Constitutionally protected rights of free speech and association.  Defendants are wrong.

Unlike the other allegations considered above, Eckel's sections 1983 and 1985 claims are not precluded by the Rooker-Feldman doctrine.  As previously indicated, a finding by this Court that Defendants violated the other Plaintiffs' protected rights under the First Amendment and stemming from the exact same

unfair labor practice charges would necessarily be in conflict with the Appellate Division's affirmance of the PERC's Final Decision.  The PERC and the Appellate Division concluded, however, that Defendants unfairly disciplined Eckel for exercising his rights in violation of the Act.  The Court is thus free to rule on the issue of whether those same actions also violated Eckel's federally protected rights.

Allowing Eckel to go forward on his claims does not violate the principles of collateral estoppel.  It is true, as Defendants indicate, that a federal court must give the same preclusive effect to a state court judgment as those judgments would be given in the courts of the state from which the judgment emerged.  28 U.S.C. § 1738; see also Kremer v. Chemical Construction Corp., 456 U.S. 461, 466 (1982).  The doctrine of collateral estoppel applied in New Jersey "precludes relitigation only of questions 'directly put in issue' and 'directly determined' adversely to the party against which the estoppel is asserted."  New Jersey-Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Board of Higher Education, 654 F.2d 868, 876 (3d Cir. 1981) (citing City of Plainfield v. Public Service Gas and Electric, 82 N.J. 245, 257-58 (1980)).  Moreover, New Jersey accords collateral estoppel effect to decisions of administrative tribunals.  Id. at 876 n. 12.  What Defendants' extensive analysis overlooks, however, is that Eckel's sections 1983 and

16

1985 claims were never "actually litigated." See Peduto v. North Wildwood, 878 F.2d 725, 727 n. 1 (3d Cir. 1998). The ALJ, the PERC and the Appellate Division made no reference to nor did they decide whether Defendants' actions violated Eckel's federal rights. Those courts were solely concerned with unfair labor practices under the Act.

The Appellate Division upheld the administrative findings of violations of the Act regarding the Sheriff's treatment and reassignment of Eckel. See In re Middlesex County Sheriff, No. A-57-02, at 17 (N.J. Super. Ct. App. Div. July 8, 2004). That court specifically found that "if Eckel was properly disciplined because he improperly left his post, without leave or authority, to engage in conduct which would be protected at another time, but the quantum of discipline was improperly affected by the otherwise protected speech or union membership, the discipline was properly reduced by PERC." Id. The Appellate Division, however, made no conclusions with respect to Eckel's sections 1983 and 1985 claims. Those claims were never raised by Eckel in the administrative and state courts nor is there an indication that he could have raised those issues. Although the allegations made in Eckel's PERC charges and the present complaint are almost identical, "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even

17

though the same act may constitute both a state tort and the deprivation of a constitutional right." Monroe v. Pape, 365 U.S. 167, 196 (1961) (Harlan, J., concurring). The resolution of claims in Eckel's favor in state court as to facts that gave rise to both a state law claim and a federal claim does not now preclude Eckel from seeking a separate and distinct remedy for violations of his federal rights.

Defendants' argument that Eckel is unable to prove a violation of his rights guaranteed under the First Amendment is baseless. On a motion for summary judgment, an issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219 n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989). The Court need look no further than the Appellate Division's analysis to conclude that there is a genuine issue of fact as to whether Defendants' actions constituted a violation of Eckel's First Amendment rights of free speech and association. The Appellate Division, in fact, affirmed the administrative findings that Eckel was retaliated against for his protected activity. In re Middlesex County Sheriff, No. A-57-02, at 17 (N.J. Super. Ct. App. Div. July 8, 2004).

**IV. Conclusion**

For the foregoing reasons, except as to the claims raised by Plaintiff Eckel, the Complaint is **dismissed with prejudice** for lack of jurisdiction pursuant to the Rooker-Feldman doctrine.

An appropriate Order follows.

                                       /s/ William G. Bassler
                                       WILLIAM G. BASSLER, U.S.S.D.J.

Dated: March 31, 2006